UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SAMUEL PANNELL,

           Petitioner,

                                        CASE NO. 05-CV-71439-DT

   v.                                    JUDGE NANCY G. EDMUNDS

                                        MAGISTRATE JUDGE PAUL J. KOMIVES

KENNETH McKEE,

           Respondent.

_____/


# REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.     *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.     *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.     *Exhaustion/Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          1.    *Exhaustion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          2.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     D.     *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     E.     *Jury Instruction Claims (Claims I-IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
              a. Reasonable Doubt Instruction (Claim I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
              b. Aiding and Abetting Instruction (Claim II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
              c. Coercive Instruction (Claim III) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
              d. Incriminatory Statement Instruction (Claim IV) . . . . . . . . . . . . . . . . . . . . . . . . 16
     F.     *Prosecutorial Misconduct and Evidence Claims (Claims V & VI)* . . . . . . . . . . . . . . . . . . . 17
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          2.    *Prosecutor's Statements (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
              a. Attack on Credibility of Petitioner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
              b. Personal Knowledge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
              c. Misstatement of the Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
              d. Using Impeachment Material as Substantive Evidence . . . . . . . . . . . . . . . . . . . . . 22
          3.    *Prosecutor's Impeachment of His Own Witness (Claim VI)* . . . . . . . . . . . . . . . . . . 23
     G.     *Ineffective Assistance of Counsel Claims (Claim VII)* . . . . . . . . . . . . . . . . . . . . . . . . . 24
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
     H.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.     REPORT:

A.      *Procedural History*

1.      Petitioner Samuel Pannell is a state prisoner, currently confined at the Bellamy Creek Correctional Facility in Ionia, Michigan.

2.      On June 13, 2001, petitioner was convicted of one count of first degree premeditated murder, MICH. COMP. LAWS § 750.316; and one count of possessing a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  On June 28, 2001, he was sentenced to a mandatory term of life imprisonment without possibility of parole on the first degree murder conviction, and to a mandatory consecutive term of two years' imprisonment on the felony firearm conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:[1]

> I.      WHETHER DEFENDANT WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS AND TO A FAIR TRIAL UNDER THE 14TH AMENDMENT TO THE US CONSTITUTION AND UNDER SECTION 17, ARTICLE 1, MICHIGAN CONST 1963 WHEN THE TRIAL JUDGE GAVE AN INADEQUATE INSTRUCTION TO THE JURORS UPON THE PROSECUTION'S BURDEN TO PROVE DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT AND UPON THE JURORS' DUTY TO FIND BEYOND A REASONABLE DOUBT THAT DEFENDANT WAS GUILTY BEFORE THEY COULD RETURN A VERDICT OF GUILTY.

---

[1]Respondent had not submitted copies of the state appellate court briefs and decisions with its Rule 5 materials.  However, petitioner and respondent agree on the claims which were raised in the Michigan Court of Appeals.  In addition, petitioner has attached to his habeas application a copy of his brief to the Michigan Supreme Court.

II.     WHETHER DEFENDANT WAS DEPRIVED OF HIS RIGHT TO DUE
        PROCESS AND A FAIR TRIAL UNDER THE 14TH AMENDMENT TO
        THE US CONSTITUTION AND UNDER SECTION 17, ARTICLE 1,
        MICH CONST 1963 WHEN THE COURT ISSUED TO THE JURORS AN
        ERRONEOUS INSTRUCTION ON THE LAW OF AIDING AND
        ABETTING.

III.    WHETHER DEFENDANT WAS DEPRIVED OF HIS RIGHT UNDER
        THE 6TH AMENDMENT TO THE STATE AND FEDERAL
        CONSTITUTION TO TRIAL BY JURY AND OF HIS RIGHT TO DUE
        PROCESS WHEN THE TRIAL COURT COERCED THE JURORS BY
        INSTRUCTION TO RETURN A UNANIMOUS VERDICT OF EITHER
        NOT GUILTY OR GUILTY WITHOUT AN OPTION TO DISAGREE
        AND RETURN NO VERDICT.

IV.     WHETHER DEFENDANT WAS DEPRIVED OF HIS RIGHT TO DUE
        PROCESS AND TO A FAIR HEARING UNDER THE STATE AND
        FEDERAL CONSTITUTION WHEN THE TRIAL JUDGE INSTRUCTED
        THE JURY THAT IF THEY FOUND FROM THE EVIDENCE THAT
        DEFENDANT HAD NOT MADE A SELF-INCRIMINATING
        STATEMENT TO THE POLICE THAT THEY SHOULD NOT CONSIDER
        IT RATHER THAN THEY MUST NOT CONSIDER IT.

V.      WHETHER DEFENDANT WAS DEPRIVED OF HIS RIGHT TO DUE
        PROCESS AND TO A FAIR TRIAL UNDER THE STATE AND
        FEDERAL CONSTITUTIONS, WHERE THE PROSECUTOR IN
        ARGUMENT TO THE JURY (1) ATTACKED THE CREDIBILITY OF
        DEFENDANT BY REPEATEDLY REFERRING TO HIM AS A 'LIAR';
        (2) TESTIFIED TO MATTERS OF HIS OWN PERSONAL KNOWLEDGE;
        (3) MISSTATED THE LAW OF PREMEDITATION; (4) AND IGNORING
        THE COURT'S RULING REPEATEDLY REFERRED TO
        IMPEACHMENTS [sic] MATERIAL IN THE TESTIMONY AS
        SUBSTANTIVE EVIDENCE OF DEFENDANT'S GUILT.

VI.     WHETHER DEFENDANT WAS DEPRIVED OF HIS RIGHT TO DUE
        PROCESS AND TO A FAIR TRIAL UNDER [THE] STATE AND
        FEDERAL CONSTITUTION[S] WHEN THE TRIAL COURT
        IMPROPERLY ALLOWED THE PROSECUTOR TO IMPEACH HIS
        OWN WITNESS WHEN THE PROSECUTOR KNEW THAT THE
        WITNESS WOULD NOT TESTIFY ON TRIAL AS THE PROSECUTOR
        HAD WANTED HIM TO.

VII.    WHETHER DEFENDANT WAS DEPRIVED OF HIS RIGHT UNDER
        THE SIXTH AMENDMENT TO THE STATE AND FEDERAL

3

CONSTITUTION[S] TO EFFECTIVE ASSISTANCE OF COUNSEL ON THE TRIAL LEVEL WHEN HIS TRIAL COUNSEL FAILED AND OMITTED (1) TO OBJECT TO THE COURT'S INSTRUCTION ON THE STANDARD OF PROOF OF GUILT (ARGUMENT I ABOVE); (2) TO OBJECT TO THE COURT'S ERRONEOUS INSTRUCTIONS ON AIDING AND ABETTING (ARGUMENT II ABOVE); (3) TO OBJECT TO THE COURT'S INSTRUCTIONS WHICH DEPRIVED THE JURORS OF THEIR RIGHT TO DISAGREE ON A VERDICT (ARGUMENT III ABOVE); (4) TO OBJECT TO THE INSTRUCTION THAT THEY "SHOULD NOT" CONSIDER THE STATEMENT OF DEFENDANT INSTEAD OF "MUST NOT" (ARGUMENT IV ABOVE); (5) TO OBJECT TO THE PROSECUTOR'S PREJUDICIAL ARGUMENTS TO THE JURORS (ARGUMENT V ABOVE); (6) TO OBJECT TO THE IMPEACHMENT BY THE PROSECUTOR OF HIS OWN WITNESS (ARGUMENT VI ABOVE).

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Pannell*, No. 237024, 2004 WL 576256 (Mich. Ct. App. Mar. 23, 2004) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these seven issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Pannell*, 471 Mich. 885, 688 N.W.2d 505 (2004).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on April 13, 2005.  As grounds for the writ of habeas corpus, he raises the seven claims that he raised in the state courts.

6.      Respondent filed his answer on October 18, 2005.  He contends that petitioner's second, fourth, and sixth habeas claims are unexhausted because they were not raised as federal constitutional claims in the state courts, and that all of petitioner's claims are barred by petitioner's procedural default in the state courts.

7.      Petitioner filed a reply to respondent's answer on November 28, 2005.

B.      *Factual Background Underlying Petitioner's Conviction*

4

The facts underlying petitioner's conviction were briefly summarized by the Michigan Court of Appeals:

> The evidence at trial indicated that defendant and a codefendant, Kevin Robinson, entered the victim's house together late one evening. Shortly thereafter, the victim was killed by a gunshot wound to the head. Although no eyewitnesses observed the shooting, Robinson's fiancée, Brandi Brewer, testified that, earlier on the day of the shooting, defendant had been angry with the victim and threatened to kill him, and that, after the shooting, defendant made several statements admitting responsibility for shooting the victim. In a statement to the police, defendant alleged that Robinson shot the victim.

*Pannell*, 2004 WL 576256, at *1.

C.     *Exhaustion/Procedural Default*

1.     *Exhaustion*

Respondent contends that petitioner's second, fourth, and sixth habeas claims are unexhausted, and that the entire petition must be dismissed on this basis. The federal habeas statute provides, in relevant part, that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). Thus, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). A petitioner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

To satisfy the exhaustion requirement, a petitioner "must have 'fairly presented the substance of each of his federal constitutional claims to the state courts.'" *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)). A petitioner "fairly presents" his claim to the state courts by either (1) relying upon federal cases employing

5

federal constitutional analysis; (2) relying upon state cases employing such an analysis; (3) phrasing the claim in terms of federal constitutional law; or (4) alleging facts within the mainstream of federal constitutional law. *See Clinkscale*, 375 F.3d at 437 (quoting *Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003)). Further, the petitioner must fairly present the claim at each level of state court review. *See O'Sullivan*, 526 U.S. at 845-47.

Exhaustion is not required only if "(I) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). A "mixed petition," that is a petition which contains both exhausted and unexhausted claims, must be treated as unexhausted in its entirety. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). A federal habeas court has no authority to grant relief on even an exhausted claim where the petition also contains unexhausted claims. *See Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000).

Nevertheless, a habeas petition "may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (emphasis added). Thus, a federal court may decide a habeas petition on the merits when the grounds for relief are without merit or are not cognizable on habeas review. *See Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991); *Prather v. Rees*, 822 F.2d 1418, 1421-1422 (6th Cir. 1987). In these circumstances, the court should dismiss the non-federal or frivolous claim on its merits to save the state courts the useless review of meritless constitutional claims. *See Cain*, 947 F.2d at 820. Because, as discussed below, petitioner is not entitled to relief on any of his claims, the Court should dismiss the claims on the merits rather than require further review in the state courts.

2.      *Procedural Default*

6

Respondent also contends that petitioner's claims are barred by petitioner's procedural default in the state courts, because petitioner did not object to any of the alleged errors at trial. Again, the Court should decline to reject petitioner's claims on this basis. Even assuming that the claims are defaulted, petitioner contends that trial counsel was ineffective for failing to object at trial. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Whether counsel was ineffective turns, at least in part, on whether the underlying claims are meritorious. Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States; or
(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the

8

holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.     *Jury Instruction Claims (Claims I-IV)*

Petitioner challenges several of the trial court's instructions to the jury in his case. Specifically, he contends that the court's reasonable doubt, aiding and abetting, and incriminatory statement instructions were erroneous, and that the court gave an instruction which coerced the jury into returning a verdict.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

9

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'"  *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Despite this deferential standard of review, a jury instruction will not withstand scrutiny if it submits alternative theories for the jury to convict, one of which is permissible and the other unconstitutional, and the reviewing court cannot determine on which theory the jury relied.  *See Zant v. Stephens*, 462 U.S. 862, 881-83 (1983); *Bachellar v. Maryland*, 397 U.S. 564, 571 (1970); *United States v. Wilkinson*, 26 F.3d 623, 625 (6th Cir. 1994).  *But see Griffin v. United States*, 502 U.S. 46, 56 (1991) (general jury verdict is valid if sufficient evidence supports one of the grounds for conviction, so long as the other submitted grounds are neither illegal nor unconstitutional, but

10

merely unsupported by the evidence); *United States v. Mari*, 47 F.3d 782, 785-86 (6th Cir. 1995). An instruction is also invalid if it can be viewed by the jury as shifting the burden of proving an element of the case onto the defendant, as when it instructs the jury to presume that a person intends to commit the natural, ordinary and usual consequences of his voluntary actions, *see Sandstrom v. Montana*, 442 U.S. 510, 524 (1979), or to presume malice from either an unlawful act or from the use of a deadly weapon, *see Yates v. Evatt*, 500 U.S. 391, 401-02 (1991); *Houston v. Dutton*, 50 F.3d 381, 385-86 (6th Cir.1995). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). Nonetheless, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

     2.    *Analysis*

       *a. Reasonable Doubt Instruction (Claim I)*

Petitioner first contends that the trial court's reasonable doubt instruction misstated the prosecutor's burden to prove his guilt beyond a reasonable doubt. Specifically, he challenges the trial court's instruction that the presumption of innocence afforded an accused "continues throughout the trial and entitled the defendant to a verdict of not guilty unless *you are satisfied* beyond a reasonable doubt that he is guilty." Trial Tr., Vol. III, at 104 (emphasis added). Petitioner contends that the use of "satisfied," instead of a stronger word such as "convinced," allowed the jury to convict him based on a standard less than beyond a reasonable doubt. The Michigan Court of Appeals rejected this claim, explaining that "satisfied" appears in the model jury instruction, and that the trial court also "instructed the jury that to prove the charges against the defendant, the prosecutor

11

had to prove beyond a reasonable doubt each of the elements of the charged offense[.]" *Pannell*, 2004 WL 576256, at *1. The court concluded that it had "no doubt that the jury understood the burden that was placed upon the prosecutor and what constituted a reasonably doubt." *Id*. The Court should conclude that this determination was reasonable.

As the Supreme Court has explained, "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). Rather, the only question is whether, "'taken as a whole, the instructions . . . correctly convey the concept of reasonable doubt to the jury.'" *Id*. (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). Here, the instructions did so. Contrary to petitioner's argument, nothing in the trial court's use of the word "satisfied" alone suggested a lesser standard of proof to the jury. Had the court simply instructed the jury that it must be satisfied of petitioner's guilt, petitioner's argument might have merit. But the court did not give that instruction; rather, it instructed the jury that it must be "satisfied beyond a reasonable doubt" that petitioner was guilty. Immediately following this instruction, the court instructed the jury that "the prosecutor must prove each element of the crime beyond a reasonable doubt. . . . If you find that the prosecution has not proven every element beyond a reasonable doubt, then you *must* find the defendant not guilty." Trial Tr., Vol. III, at 104. The court then gave a definition of reasonable doubt. *See id*. at 104-05. These instructions, taken as a whole, did not convey anything to the jury other than that the prosecutor was required to prove petitioner's guilt beyond a reasonable doubt. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Aiding and Abetting Instruction (Claim II)

Petitioner next challenges the trial court's instruction on aiding and abetting. As to this

aspect of the case, the court instructed:

> In this case the defendant is charged with committing First Degree Premeditated Murder or intentionally assisting someone else in committing it. Anyone who intentionally assisting [sic] someone else in committing a crime is as guilty as the person who directly commits it and can be convicted of that crime as an aider and abettor. To prove this charge, aiding and abetting, the prosecutor must prove each of the following elements beyond a reasonable doubt:
> First, that the alleged crime was actually committed either by the defendant or someone else. And it does not matter whether anyone else has been convicted of that crime.
> Second, that before or during the crime the defendant did something to assist in the commission of that crime.
> And third, the defendant must have intended the commission of the crime alleged or must have known that the other person intended its commission at the time of giving the assistance.
> Even if the defendant knew that the alleged crime was planned or was being committed, the mere fact that he was present when it was committed is not enough to prove that the defendant – to prove that he assisted in committing it.

Trial Tr., Vol. III, at 119-20. Petitioner argues that this instruction did not adequately convey to the jury that specific intent necessary to convict him of aiding and abetting first degree murder, namely that he intended to kill the victim or knew of his codefendant's intent to kill the victim at the time he rendered assistance. The Michigan Court of Appeals rejected this claim, reasoning that the instruction adequately conveyed the intent necessary to convict on an aiding and abetting theory, and that taken with the other instructions regarding the specific intent necessary to establish first degree murder, the instructions as a whole adequately instructed the jury on the intent element. *See Pannell*, 2004 WL 576256, at *1. The Court should conclude that this determination was reasonable, and that petitioner is therefore not entitled to habeas relief on this claim.

Under Michigan law, first degree murder includes any "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MICH. COMP. LAWS § 750.316(1). Thus, "[i]n order to convict a defendant of first-degree murder, the prosecution must

13

prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v. Anderson*, 209 Mich. App. 527, 537, 531 N.W.2d 780, 786 (1995); *see also*, *Grant v. Rivers*, 920 F. Supp. 769, 786 (E.D. Mich. 1996); *People v. Younger*, 380 Mich. 678, 681, 158 N.W.2d 493, 495 (1968); *People v. Brown*, 137 Mich. App. 396, 407, 358 N.W.2d 592, 597 (1984). Further, Mich. Comp. Laws § 767.39 abolished the common law distinction between aiders and abettors and principals, and provides that aiders and abettors may be prosecuted and convicted as though they had directly participated in the crime. *See People v. Palmer*, 392 Mich. 370, 378, 220 N.W.2d 393, 396 (1974). Aiding and abetting under Michigan law requires proof of three elements: (1) commission of the underlying crime either by the defendant or some other person; (2) acts or encouragement by the defendant which aided or assisted the commission of the crime; and (3) intent on the part of the defendant to commit the crime or knowledge by the defendant that the principle intended to commit the crime at the time aid or encouragement was given. *See People v. Acosta*, 153 Mich. App. 504, 511-12, 396 N.W.2d 463, 467 (1986) (per curiam). Thus, "[t]o be convicted of aiding and abetting first-degree [premeditated] murder, the defendant must have had the intent to kill or have given the aid knowing the principal possessed the intent to kill." *People v. Buck*, 197 Mich. App. 404, 410, 496 N.W.2d 321, 326 (1992), *rev'd on other grounds sub nom. People v. Holcomb*, 444 Mich. 853, 508 N.W.2d 502 (1993).

Here, the trial court's instructions to the jury adequately conveyed each of these elements. In the aiding and abetting instruction specifically, the Court instructed that aiding and abetting liability could be found only if the prosecution proved that the underlying crime was committed by someone, that petitioner assisted in the commission of that crime, and that the petitioner either intended the crime to occur or knew of his codefendant's intent at the time he rendered assistance.

14

Further, the court had previously instructed the jury on all of the elements of first degree murder, including the intent to kill element. *See* Trial Tr., Vol. III, at 111-12. Thus, taken as a whole the instructions adequately conveyed to the jury that, to be convicted on an aiding and abetting theory, petitioner's codefendant must have intended to kill the victim, and that petitioner must have either shared this intent or knew of the codefendant's intent at the time he rendered assistance. The instruction thus did not deprive petitioner of a fair trial. *See Williams v. Withrow*, 328 F. Supp. 2d 735, 753 (E.D. Mich. 2004) (Lawson, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Coercive Instruction (Claim III)

Petitioner next contends that the trial court coerced the jury into reaching a verdict by instructing the jury that its only options were to return a verdict of either guilty or not guilty, and by failing to instruct the jury of its ability to return no verdict as a hung jury. The Court should conclude that petitioner is not entitled to habeas relief on this ground. While it is true that an instruction to a jury that it must reach a verdict, given in response to the jury's indication of a deadlock, may be impermissibly coercive, *see Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam), such an instruction was not given here. Rather, petitioner contends that he was entitled to an instruction that the jury could fail to return a verdict prior to the commencement of deliberations. Contrary to petitioner's argument, however, "[a] criminal defendant has no right to an initial instruction specifically setting forth the option of a hung jury." *Hammer v. Bowlen*, 934 F. Supp. 911, 918 (M.D. Tenn. 1996) (citing *United States v. Arpan*, 887 F.2d 873, 876 (8th Cir. 1989)). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

#### d. Incriminatory Statement Instruction (Claim IV)

Petitioner also contends that he was denied a fair trial by the court's instruction with respect to the statement petitioner gave to the police. Specifically, the court instructed the jury:

> The prosecution has introduced evidence of a statement that it claims the defendant made. You cannot consider such an out of court statement as evidence against the defendant unless you do the following:
> First, you must find the defendant actually made the statement as it was given to you. If you find that the defendant did not make the statement at all, you should not consider it. If you find that he made part of the statement, you may consider that part as evidence.

Trial Tr., Vol. III, at 115-16. Petitioner contends that this instruction was erroneous because it merely instructed the jury that, if it found petitioner had not made the statement, it "should not" consider the statement, rather than it "must not" consider it. The Michigan Court of Appeals rejected this claim, concluding that the instruction as a whole adequately instructed the jury that it could not consider the statement without first determining that petitioner had, in fact, made the statement. *See Pannell*, 2004 WL 576256, at *2. The Court should conclude that this determination was reasonable.

Contrary to petitioner's argument, the court's use of "should not" did not imply that the jury was free to consider the statement if it found petitioner had not made it. "Should not," when conveyed in an instruction of the court, does not merely carry a connotation of moral censure, as petitioner argues. Rather, in context it is clear that the court was instructing the jury simply not to consider the statement if it concluded that petitioner did not in fact make the statement. This conclusion is confirmed by the entirety of the court's instruction. Specifically, the court instructed the jury that it "cannot consider" the petitioner's statement unless it found that he had made the statement, and that it "must find" that he made the statement. Taken as a whole, the instructions

16

adequately conveyed to the jury that it was prohibited from considering petitioner's statement unless it first found that he had actually made the statement. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.   *Prosecutorial Misconduct and Evidence Claims (Claims V & VI)*

Petitioner next contends that he was denied a fair trial by several statements of the prosecutor, and by the prosecutor's presenting of a witness solely to impeach the witness. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.   *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id*. (internal quotation omitted).

Similarly, unless a violation of a state's evidentiary rule results in the denial of fundamental

17

fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994); *see also, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

       2.      *Prosecutor's Statements (Claim V)*

      Petitioner first contends that he was denied a fair trial by a number of the prosecutor's comments during closing argument. The Court should conclude that these claims are without merit.

*a.  Attack on Credibility of Petitioner*

Petitioner first challenges a number of statements in which the prosecutor called petitioner

or his codefendant a liar.  Specifically, the prosecutor made the following statements during closing

and rebuttal argument:

- Commenting on petitioner's call to 911 following the murder: "And the operator says to him I don't know what happened – or says what happened?  I don't know nothing about what happened, it just happened.  He's dead, he's not moving, whatever.  I don't know anything about it.  Liar, dead, dead lie.  He knows everything of what happened.  Lies to the police right of the bat.  Why?  Because he's covering himself."  Trial Tr., Vol. III, at 65.

- Referring to petitioner: "And this liar?  Wouldn't believe anything out of that.  I mean the record is full of it, this evidence is full of it.  A person who's covering themselves [sic] up comes back and sees – you know, Mr. Evans said, well, do you believe that dime store novel that he comes back?  What did he do?  That's exactly what he did . . . ."  Trial Tr., Vol. III, at 100.

- Again referring to the 911 call: "Listen to that tape because if that tape doesn't say anything beyond Kevin Robinson shot this guy, it is a cover-up. . .  But you remember clearly, you remember what this is about, and if there's any question in you mind, you can play on those tapes and you play the first tape-recorded message and then you play the second one and then you play the third one and then the fourth one from this liar and you think about the importance of this . . . ."  Trial Tr., Vol. III, at 101-02.

The Michigan Court of Appeals rejected petitioner's claim, reasoning:

[A]fter reviewing the challenged portions of the prosecutor's arguments, we find that they reflect his appropriate comments that defendant lacked credibility on the basis of the evidence introduced at trial showing that defendant (1) acknowledged to Brewer that he shot the victim, (2) subsequently disclaimed to the 911 operator and the police knowledge of or participation in the victim's death, and tried to deflect responsibility to Robinson, and (3) told the police that he could not breathe before running speedily away from them. . . .  All of the challenged portions of the prosecutor's arguments derive from the evidence produced at trial and the reasonable inferences arising therefrom[.]"

*Pannell*, 2004 WL 576256, at *3.  The Court should conclude that this determination was

reasonable.

19

It is well established that a prosecutor may urge the jury to draw permissible inferences from the evidence. *See Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence); *United States ex rel. Williams v. Washington*, 913 F. Supp. 1156, 1163 (N.D. Ill. 1995) (same). As the Michigan Court of Appeals explained, the prosecutor merely argued that petitioner's version of events was inconsistent with the evidence at trial, and therefore that he was lying. Because the prosecutor's argument was based on the facts of the case, they did not deprive petitioner of a fair trial. *See Williams*, 913 F. Supp. at 1163 (prosecutor's assertion during closing argument that the defendant had "lied" did not deprive petitioner of a fair trial where "the prosecution's statements were reasonable inferences drawn from the physical evidence and witness testimony[.]"); *cf. Kappos v. Hanks*, 54 F.3d 365, 367-68 (7th Cir. 1995) (petitioner not denied a fair trial where prosecutor referred to him as a "murderer" and "artful liar"). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Personal Knowledge

Petitioner also argues that the prosecutor's statements that petitioner was lying, as well as the prosecutor's comments that (1) witness Dushawn Walker's testimony that he had not read the signed statement he gave to the police was "baloney," *see* Trial Tr., Vol. III, at 62, and (2) petitioner's "stuff is a lie because he doesn't want to take the heat for the actual shot," *see id.* at 70, constituted impermissible argument based on personal knowledge. To the contrary, however, these comments were merely permissible arguments based on the evidence adduced at trial, and on common sense. As noted above, a prosecutor may argue permissible inferences drawn from the evidence adduced at trial. *See Martin*, 773 F.2d at 717. Further, "[i]t is well established that juries

are allowed to draw upon their own experience in life as well as their common sense in reaching

their verdict.  While common sense is no substitute for evidence, common sense should be used to

evaluate what reasonably may be inferred from circumstantial evidence." *U.S. v. Durham*, 211 F.3d

437, 441 (7th Cir. 2000) (internal quotation omitted).  Thus, the prosecutor was permitted to urge

the jury to use its common sense in evaluating the testimony offered at trial.  *See United States v.*

*Catano*, 65 F.3d 219, 228 (1st Cir. 1995); *United States ex rel. Hamilton v. Ellingsworth*, 629 F.

Supp. 356, 366 (D. Del. 1988).

*c.  Misstatement of the Law*

Petitioner next argues that the prosecutor misstated the law of premeditation and deliberation

when he argued:

> I indicated premeditation and deliberation, to think out beforehand, to
> evaluate the major facets of a choice and make a conscious choice, to weigh the pros
> and cons of your actions, the ability to stop and pause, to take a second look at your
> actions.  That's what Murder in the First Degree is about.
> We talked about the light situation or the light that turned yellow and we
> shoed what premeditation can be.  It can be split second.  The reason that's important
> is the law doesn't say how long of a period, doesn't say, well, it's got to be 10
> seconds, it's got to be 15 seconds, the law doesn't say that.

Trial Tr., Vol. III, at 54.

Contrary to petitioner's argument, the prosecutor's statement was consistent with well-

established Michigan law on premeditation and deliberation.  As another judge of this Court has

explained: "Premeditation and deliberation require sufficient time to allow the defendant to take a

second look at his or her actions.  The time interval may be minimal.  A sufficient time lapse to

provide an opportunity for a 'second look' may be merely seconds, minutes, or hours or more,

dependant on the totality of the circumstances surrounding the killing." *Johnson v. Hofbauer*, 159

F. Supp. 2d 582, 596 (E.D. Mich. 2001) (Tarnow, J.) (citations omitted); *see also*, *People v. DeLisle*,

202 Mich. App. 658, 660, 509 N.W.2d 885, 888 (1993), *denial of habeas corpus aff'd by DeLisle v. Rivers*, 161 F.3d 370, 389 (6th Cir. 1998) (en banc).

Further, even if the prosecutor's comment misstated the law, petitioner cannot show that he was denied a fair trial by the misstatement. The trial court instructed the jury on the element of premeditation and deliberation, *see* Trial Tr., Vol. III, at 111-12, and petitioner does not contend that the trial court's instruction was erroneous. Further, the court instructed the jury that it "must take the law as I give it to you. If a lawyer has said something different about the law, follow what I say." *Id*. at 103-04. Because the trial court correctly stated the law and admonished the jury that only its instructions on the law were to be followed, petitioner cannot show that he was prejudiced by the prosecutor's alleged misstatement of the law. *See United States v. Wadlington*, 233 F.3d 1067, 1079 (8th Cir. 2000); *United States v. Gonzalez-Gonzalez*, 136 F.3d 6, 9 (1st Cir. 1998). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d. Using Impeachment Material as Substantive Evidence

Finally, petitioner contends that the prosecutor committed misconduct by using impeachment evidence as substantive evidence at guilty. At trial, the prosecutor called Dushawn Walker, who testified that two men got out of a car and went into the victim's house. He denied that the passenger (whom other testimony indicated was petitioner) had "something shiny" in his hand when he exited the vehicle. However, the prosecution impeached Walker with his statement to the police, in which he indicated that the passenger did have something shiny in his hand. *See* Trial Tr., Vol. I, at 278. The trial court ruled that Walker's statement to the police was inadmissible hearsay and could not be used as substantive evidence, but could only be used for impeachment purposes. *See id*. at 288. Nevertheless, the prosecutor referred to Walker's statement to the police, and specifically

22

his statement that the passenger had a shiny object when he exited from the vehicle, during closing argument. *See* Trial Tr., Vol. III, at 62, 66.

Even assuming that petitioner's characterization of the prosecutor's argument is correct, petitioner cannot show that he is entitled to habeas relief on this claim. First, the rule prohibiting the use of a prior inconsistent statement as substantive evidence of guilty is not a rule of constitutional dimension. *See Isaac v. United States*, 431 F.2d 11, 15 (9th Cir. 1970). Further, as discussed below, the prosecutor's calling and questioning of Walker was permissible, and the trial court specifically instructed the jury that Walker's prior statement could not be used as substantive evidence, but must only be considered for impeachment purposes. *See* Trial Tr., Vol. III, at 117-18. In these circumstances, the prosecutor's comments did not deprive petitioner of a fair trial. *See Christopherson v. Boone*, 49 Fed. Appx. 257, 261 (10th Cir. 2002). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.      *Prosecutor's Impeachment of His Own Witness (Claim VI)*

Petitioner also contends that the he was denied a fair trial when the prosecutor was permitted to call Walker as a witness solely to impeach him with his prior statement to the police. In support of this claim, petitioner relies on state cases suggesting that a prosecutor may not call a witness it knows will give favorable testimony to the defendant solely to impeach that testimony with the witness's prior statements. Petitioner's claim fails for two reasons.

First, petitioner's claim does not raise a federal constitutional issue. The Supreme Court has never held that it is unconstitutional for a prosecutor to impeach its own witness, and such impeachment is routine in criminal trials. *See Escobar v. Senkowski*, No. 02 Civ. 8066, 2005 WL 1307939, at *12 (S.D.N.Y. May 26, 2005); *Davie v. Mitchell*, 291 F. Supp. 2d 573, 602-03 (N.D.

23

Ohio 2003).  Thus, the Michigan Court of Appeals's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

Second, petitioner's claim fails as a matter of the state law upon which he relies.  As the Michigan Court of Appeals explained, petitioner's argument is based on caselaw which predates the 1991 amendment to MICH. R. EVID. 607.  Under that amendment, the Michigan courts have explained, a prosecutor may impeach its own witness, limited only by the rule that "'[a] prosecutor cannot use a statement that directly tends to inculpate the defendant under the guise of impeachment when there is no other testimony from the witness for which his credibility is relevant to the case.'" *Pannell*, 2004 WL 576256, at *4 (quoting *People v. Kilbourn*, 454 Mich. 677, 682, 563 N.W.2d 669, 671 (1997)).  Here, contrary to petitioner's argument, the relevance of Walker's testimony was not limited to the testimony concerning whether petitioner did or did not have a gun (i.e.., "something shiny") when he exited the vehicle.  Rather, "Walker was the sole eyewitness to the events immediately preceding the victim's shooting death," and he offered testimony concerning the identity of the car, seeing two men approach the victim's house, and hearing a gun shot.  *Id*. at *5. In these circumstances, the impeachment of Walker by the prosecutor was permissible under Michigan law.  *See Cathron v. Jones*, 190 F. Supp. 2d 990, 999-1000 (E.D. Mich. 2002) (Friedman, J.), *aff'd*, 77 Fed. Appx. 835 (6th Cir. 2003).  Because this impeachment was proper under state law, petitioner cannot show that he was denied a fair trial by the prosecutor's actions.  *See Johnson v. Sublett*, 63 F.3d 926, 931 (9th Cir. 1995).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Ineffective Assistance of Counsel Claims (Claim VII)*

Finally, petitioner contends that his trial counsel was ineffective for failing to object to the

24

allegedly erroneous jury instructions, prosecutorial comments, and impeachment of Walker.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

    1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *See id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See id.*  at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

25

doubt respecting guilt." *Id*. at 695.

　　　2.　　*Analysis*

Petitioner's ineffective assistance claims all derive from his jury instruction, prosecutorial misconduct, and improper impeachment claims discussed above.  And as discussed above, petitioner has failed to show that any of the instructions were erroneous, that the prosecutor committed misconduct, or that the prosecutor's impeachment of Walker was improper.  Counsel cannot be deemed ineffective for failing to raise meritless objections to these instructions and prosecutorial comments.  Thus, petitioner cannot show that counsel was ineffective for failing to object to the reassignment.  *See Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) (counsel not ineffective for failing to raise meritless objection); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993) (same).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.　　*Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.　　　NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 3/27/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on March 27, 2006.

s/Eddrey Butts
Case Manager

27